IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00190-PAB

JAY R. BURNS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.
_____

**ORDER AFFIRMING COMMISSIONER**
_____

This matter comes before the Court on plaintiff Jay R. Burns' Complaint [Docket No. 3] filed January 30, 2008. Plaintiff seeks review of defendant Michael J. Astrue's (the "Commissioner") final decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiff was born on June 11, 1956. Tr. 88. On March 28, 2005, he first claimed disability benefits under the Act. Tr. 24, 98. Plaintiff's original alleged onset date – February 28, 2005 – is the same day that he received medical care for injuries resulting from two bicycle accidents. *Id.* at 104-16. Explaining how his illnesses, injuries or conditions affected his ability to work, plaintiff stated that "I am in constant pain in my

left arm, shoulder and neck. I can't walk for long periods and can't lift." *Id.* at 98.

Following an initial denial of his claim for disability benefits in August 2005, *see* Tr. 22-23, 30-32, plaintiff supplemented his disability claim, asserting that "[m]y right shoulder has started dislocating again and also gives me pain and has limited my range of motion as well." Tr. 91. He was forty-nine years old at that time. Plaintiff subsequently amended his onset date to his fiftieth birthday, June 11, 2006. Tr. 8, 53.

Following a hearing on plaintiff's claim for disability benefits, on October 3, 2007, an Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Act. Tr. 14-21. Plaintiff appealed that determination to the Appeals Council, which declined review on December 18, 2007, Tr. 4-6, thus finalizing the Commissioner's finding of no disability.

### B. Medical History

Medical records from Pueblo Community Health Center indicate that plaintiff suffered a dislocation of his right shoulder in approximately May 1994, causing limitation in his range of motion. Tr. 180. In February 2001, plaintiff's right shoulder was surgically treated to repair his rotator cuff injury. Tr. 186. In February 2005, the record indicates that plaintiff sustained injuries from two bicycle accidents, one involving a collision with a moving car. Plaintiff was treated on February 28, 2005 at Parkview Medical Center for these injuries. Tr. 104-16. An emergency room report from 6:10 a.m. that day states that plaintiff "went over the end of his bicycle" the previous afternoon and noted that plaintiff complained of right wrist pain, but denied any other injuries. Tr. 105. Radiologic studies showed an avulsion fracture and a possible occult fracture in plaintiff's right wrist. *Id.* at 108. Plaintiff was discharged with a velcro splint,

2

a pain medication prescription, and a referral to an orthopedist. *Id.* Later that afternoon, plaintiff again reported to Parkview Medical Center with a left shoulder injury. *Id.* at 111. The emergency department record explains that plaintiff was riding his bike and ran into a car, which was moving at ten to fifteen miles per hour. *Id.* Plaintiff was diagnosed with a clavicle fracture and placed in a left arm sling for comfort. *Id.*

Plaintiff was examined by Dr. Mark Stevens on July 23, 2005 in connection with his application for disability benefits. Plaintiff complained of bilateral shoulder pain to Dr. Stevens. Tr. 117. Dr. Stevens noted that plaintiff reported that he "frequently dislocates his right shoulder but now has constant left shoulder pain and range of motion difficulties." *Id.* Regarding the impact of such conditions on plaintiff's daily activities, Dr. Stevens recorded that plaintiff "does his own cooking and laundry chores and attends to his own personal hygiene." *Id.* Upon physical examination, Dr. Stevens noted that plaintiff was carrying his left arm close to his body, but is right-handed. *Id.* at 118. Dr. Stevens found that plaintiff had general tenderness in his left shoulder, but showed normal muscle bulk and tone with strength of "5/5 in upper and lower extremities." *Id.* at 119. Dr. Stevens diagnosed plaintiff with post rotator cuff repair pain in his right shoulder and suspected rotator cuff pathology in his left shoulder, causing left shoulder pain. *Id.* at 120. Dr. Stevens recommended the following limitations in his functional assessment of plaintiff:

> Lifting and carrying should be limited to 10 pounds or less occasionally and frequently on the basis of his bilateral shoulder pain. . . . The claimant's pushing and pulling are limited in the upper extremities for the same reasons. . . . Reaching up and out should be limited to occasional usage [bilaterally]; reaching down, feeling, fingering, and handling are unrestricted.

*Id.* A radiological examination of plaintiff two days later, on July 25, 2005, revealed evidence of "an old fracture of the left mid clavicle," but noted that plaintiff's shoulder joint, scapula, and ribs were otherwise normal. *Id.* at 121.

Plaintiff's medical records include three assessments signed by Dr. Velma L. Campbell in connection with eligibility determinations for the State of Colorado's Aid to the Needy Disabled program. The three written MED-9 forms signed by Dr. Campbell, dated August 11, 2005, April 20, 2006, and March 6, 2007, each contain substantially similar diagnoses and a finding of disability for purposes of the State program. *See* Tr. 131-36. Specifically, Dr. Campbell repeatedly noted a non-union left clavicular fracture and neuropathy of left arm and hand, likely secondary to the clavicle fracture. *Id.* These reports also note degenerative change to plaintiff's right shoulder with chronic subluxation of that joint, as well as plaintiff's complaints of headaches. *Id.*

Plaintiff reported in his disability benefit application that his injuries affected his abilities to lift, reach, walk, concentrate, and use his hands. Tr. 79. He specifically stated that he was impeded in "lifting and reaching with left hand [and] arm" and that "the constant pain from[] a pinched nerve makes it hard to concentrate sometimes." *Id.* Plaintiff further complained of a constant stinging or burning sensation throughout his arm, shoulder, neck and chest. *Id.* Out of plaintiff's listed hobbies of watching TV, hiking, biking, and training dogs and horses, he indicated that his conditions cause him to avoid training horses, biking, and carrying a big pack while hiking. *Id.* at 78.

At the hearing before the ALJ, plaintiff testified that although no corrective surgeries had been recommended for his left shoulder, he suffers pain in that joint "all

the time." Tr. 195. As examples of limitations caused by this pain, plaintiff said that "anything over my head I can't do it" and testified that he was only able to extend his left arm straight out in front of him for ten seconds. *Id.* at 196. Plaintiff stated that his right shoulder has dislocated about five times since having surgery on that joint and that he is able to reduce his shoulder if it dislocates. *Id.* at 197. He testified that he is able to hold his right arm out in front of his body for about twenty seconds. *Id.* at 198. Plaintiff testified that bike riding is one of his means of transportation, even though riding a bike bothers him. *Id.* at 201.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir.2003). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The ALJ's Decision

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 248, 250 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).

In the present case, the ALJ reached step five in the evaluation process before concluding that plaintiff was not disabled. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 28, 2005. Tr. 16. The ALJ found that plaintiff's left upper extremity pain was a severe impairment at step two. *Id.* Finding that plaintiff did not have an impairment satisfying the step three listing criteria, the ALJ proceeded to determine plaintiff's residual functional capacity ("RFC"). *Id.* The

6

ALJ stated plaintiff's RFC as: "capacity to perform light work that does not require lifting over 10 pounds, that does not required overhead working and that does not require any pushing/pulling." *Id.* Based upon this RFC, the ALJ found that plaintiff is unable to perform any of his past relevant work as a construction laborer or ranch hand. *Id.* at 20. At step five, the ALJ relied on the testimony of a vocational expert in finding that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* at 21.

To ascertain plaintiff's RFC, the ALJ weighed the objective medical evidence in plaintiff's medical file and evaluated plaintiff's credibility regarding his statements about the intensity, persistence, and limiting effects of his pain symptoms. The ALJ gave "significant weight" to the examination report authored by Dr. Stevens. Tr. 18. The ALJ detailed the limitations observed by Dr. Stevens as follows:

> the claimant could lift/carry 10 pounds o[r] less and push/pull the same weight. There were no restrictions placed on his ability to sit, stand, and/or walk. The claimant could occasionally reach up and/or out. There were no limitations on his ability to reach down, feel, finger, or handle.

*Id.* On the other hand, the ALJ accorded no weight to the medical opinions of Dr. Campbell because the ALJ found that those opinions included "no specific limitations" and "there is no supporting documentation supplied with the forms." *Id.* The ALJ also noted that a May 2007 examination of plaintiff at Pueblo Community Health Center revealed "normal muscle strength and normal reflexes." *Id.* The ALJ ruled out a number of conditions indicated in plaintiff's medical file from consideration as severe impairments, including recurring dislocation of plaintiff's right shoulder, headaches,

7

diagnosis of Hepatitis C, and alleged mental health issues.[1]  *Id.*

The ALJ determined that plaintiff's medically determinable impairment reasonably could be expected to produce plaintiff's alleged symptoms, but found that plaintiff's statements regarding his pain symptoms were not entirely credible.  *Id.*  In particular, the ALJ found that plaintiff's testimony that he was in pain all the time from a broken collar bone and experienced numbness within ten seconds of extending his left arm straight out were not credible.  *Id.*  The ALJ concluded that "the medical records do not support this, as examinations are within normal limits with no objecti[ve] findings of such severe numbness."  *Id.* at 19.

The ALJ relied on testimony from a vocational expert to determine whether plaintiff was able to perform work at a lower exertional level than his past relevant work.  At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Let's assume an individual the same age and educational background as the claimant, limited to an exertional level in a limited range of light and that limitation being lifting and carrying only 10 pounds.  No overhead work, no push/pull maneuvers. . . .  Would there be other jobs that are compatible?

Tr. 204.  In response, the vocational expert stated that such work did exist and, as representative examples, listed the positions of electronics worker, order clerk, and ticket taker within the "light" exertional category and fitting the limitations stated by the ALJ.  *Id.* at 205.  The ALJ cited these same examples of occupations that plaintiff would be able to perform in concluding that plaintiff was capable of making a transition to

---

[1] In this appeal, plaintiff does not contend that the ALJ erred by finding that only plaintiff's left shoulder pain constituted a severe impairment.  *See* Pl.'s Opening Brief [Docket No. 11]; Pl.'s Reply Brief [Docket No. 13].

substantial gainful activity and, thus, not disabled under the Act.

### C. Evaluation of the ALJ's Decision

"Under the Social Security Act, the claimant has the burden of proving a disability." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991) (alterations omitted). However, if the ALJ determines at step four that a claimant cannot perform her past relevant work, "it is not the claimant's burden to prove he cannot work at any level lower than his past relevant work; it is the agency's burden to prove that he can." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (alterations omitted).

Plaintiff challenges the ALJ's step five conclusion, arguing that the Commissioner did not sustain its burden to prove that plaintiff is capable of engaging in substantial gainful activity despite his limitations associated with his left shoulder. Plaintiff seeks to overturn the Commissioner's decision on limited grounds: the ALJ failed to include in both plaintiff's RFC and in the hypothetical questions posed to the vocational expert the "reaching out" limitation identified by Dr. Stevens. Therefore, plaintiff argues, the vocational expert's testimony cannot constitute substantial evidence for a finding of no disability.

Much of plaintiff's argument stems from a false premise, that is, the ALJ adopted Dr. Stevens' *entire* opinion and rejected all other opinions regarding plaintiff's disability. Assuming this is true, plaintiff argues that the ALJ's RFC determination is flawed because it inexplicably omits the "reaching out" restriction, in contravention of the principle that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."

9

*Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  Contrary to plaintiff's contention, the ALJ did not fully adopt Dr. Stevens' opinion and all limitations set forth therein. Instead, while stating that Dr. Stevens' opinion was entitled to "significant weight," the ALJ identified other medical evidence in the record inconsistent with the Dr. Stevens' conclusion that plaintiff should be restricted to occasional reaching out bilaterally.

For example, the ALJ cited an examination conducted more recently than Dr. Stevens' examination – one on May 2007 – which assessed plaintiff as having normal strength and normal deep tendon reflexes in his extremities.  Tr. 18, 157.  The ALJ also noted that Dr. Stevens' July 2005 examination revealed some tenderness in plaintiff's left shoulder, but that plaintiff had normal muscle bulk and tone and normal strength. Tr. 17.  Additionally, because plaintiff's right shoulder was surgically repaired in 2001 and plaintiff testified that he was able to manage dislocation of his right shoulder by reducing it himself, the ALJ found that plaintiff's right shoulder problems were not durational, that is, not expected to last twelve months or more as required by the Act. *Id.* at 18.  The ALJ therefore considered only plaintiff's left shoulder impairment when formulating an RFC for plaintiff, thus ruling out any significant limitation in reaching with regard to plaintiff's dominant right arm.  This conclusion contrasts with Dr. Stevens' opinion, which found limitations in lifting, pushing, pulling, and reaching out based on plaintiff's "bilateral shoulder pain."  *Id.* at 120.

Neither the Act nor its implementing regulations require an ALJ to adopt in the entirety an examiner's medical opinion to which the ALJ attributes significant weight. Rather, the ALJ may discount medical evidence that is inconsistent with other evidence. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007).  In light of the other evidence

evaluated by the ALJ, the Court finds that the ALJ's omission of Dr. Stevens' bilateral reaching out limitation was supported by substantial evidence.

Plaintiff's statements regarding his own difficulty in reaching his arms out is the only evidence of record supporting that particular limitation beyond Dr. Stevens' report. The ALJ explicitly addressed the credibility of these statements and found that they did not comport with the weight of the medical evidence in plaintiff's file. To assess plaintiff's statements regarding pain, the ALJ should ask: (1) whether plaintiff established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and plaintiff's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, plaintiff's pain is in fact disabling. *Branum v. Barnhart*, 385 F.3d 1268 (10th Cir. 2004) (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)). If the medical evidence establishes a pain producing ailment that has a loose nexus with the claimant's subjective complaints about pain, then the ALJ is to determine the credibility regarding those complaints. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

This Court's review of the ALJ's credibility determinations is guided by two principles. First, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (alterations omitted).

The ALJ's opinion makes clear that he proceeded through the first two steps of

11

the *Luna* inquiry, but found that plaintiff's subjective statements regarding pain from extending his arms were not credible. In so finding, the ALJ determined that the medical records did not support plaintiff's statements because the examinations on record were within normal limits. The ALJ's credibility determinations were not erroneous. A number of examinations, including that of Dr. Stevens, attributed normal strength and tone to plaintiff in his upper extremities. Tr. 119, 157, 163. Because no direct support appears in the record for plaintiff's asserted inability to extend his arms out for more than a matter of seconds, the ALJ's finding in the first instance should be upheld. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) ("A claimaint's subjective allegation of pain, standing alone, is insufficient to establish disability.").

Plaintiff contests not only the ALJ's failure to include a specific reaching out limitation in the RFC finding, but also the omission of such a limitation from the hypothetical questions posed to the vocational expert. Because the Court finds no reversible error with respect to the ALJ's RFC determination, there was no need for the ALJ to specifically identify the reaching out limitation when questioning the vocational expert. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (response to hypothetical question that included all limitations that ALJ ultimately included in his RFC assessment, but not all limitations claimed by the plaintiff, constituted substantial evidence for ALJ's disability decision); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (stating that hypothetical to vocational expert "must include all (and only) those impairments borne out by the evidentiary record").

## III. CONCLUSION

Upon review of the arguments raised by plaintiff on his appeal of the ALJ's October 7, 2007 decision, I find that the ALJ's determinations are supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, it is

**ORDERED** that the decision of Commissioner that the plaintiff was not disabled is AFFIRMED.

DATED March 17, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge